No. 23-10781

# In the United States Court of Appeals for the Fifth Circuit

HERMAN GREINSTEIN; KATHLEEN CANCIENNE; EDWIN COLLAZO; ERIC FARMER; ANTONIO FLORES; RAY HIGHTOWER; JESSE JACKSON, SR.; STEPHEN JONES; CALVIN OBERNDORFER; ADILSON QUINTELA; CULTON SPEER; MATTHEW STARR; BYRON WHITE; ALTONIA WILLIAMS,

*Plaintiffs-Appellees,*

v.

GRANITE SERVICES INTERNATIONAL, INCORPORATED; FIELDCORE SERVICES SOLUTIONS, L.L.C.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Texas
Case No. 2:18-cv-00208

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

Yaakov M. Roth
yroth@jonesday.com
Joshua T. Hoyt
jhoyt@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

Brett C. Bartlett
bbartlett@seyfarth.com
Kevin M. Young
kyoung@seyfarth.com
Zheyao Li
zyli@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree St., N.E., Ste. 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

**No. 23-10781, Herman Greinstein *et al.* v. Granite Services Int'l, Inc. *et al.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs | Plaintiffs' Counsel |
|---|---|
| Current Plaintiffs<br><br>1. Herman Greinstein<br><br>2. Kathleen Cancienne<br><br>3. Edwin Collazo<br><br>4. Eric Farmer<br><br>5. Antonio Flores<br><br>6. Ray Hightower<br><br>7. Jesse Jackson, Sr.<br><br>8. Stephen Jones<br><br>9. Calvin Oberndorfer<br><br>10. Adilson Quintela<br><br>11. Culton Speer<br><br>12. Matthew Starr | 1. JOSEPHSON DUNLAP LLP; Andrew W. Dunlap; Michael A Josephson; David M. Mathews; Richard M. Schreiber<br><br>2. BRUCKNER BURCH PLLC; Richard J. (Rex) Burch<br><br>3. MORGAN & MORGAN, P.A.; Andrew R. Frisch; C. Ryan Morgan<br><br>4. WOOD LAW FIRM, LLP; Channy F. Wood |

| | |
|---|---|
| 13. Byron White<br><br>14. Altonia Williams<br><br>Former Plaintiff<br><br>  1. Edward Geers | |
| **Defendants** | **Defendants' Counsel** |
| Current Defendant<br><br>  1. FieldCore Service Solutions, LLC, a wholly owned subsidiary of FieldCore Service, Inc., a wholly owned subsidiary of GE Vernova LLC, a wholly owned subsidiary of General Electric Company.<br><br>Former Defendant<br><br>  1. Granite Services International, Inc. | 1. SEYFARTH SHAW LLP; Brett C. Bartlett, Kevin M. Young, Zheyao Li<br><br>2. JONES DAY; Yaakov M. Roth, Joshua T. Hoyt<br><br>3. UNDERWOOD LAW FIRM, P.C.; Kelly D. Utsinger, Autum L. Flores; Stephanie J. James |

s/ *Jacob M. Roth*
*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................................................. i

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.  PLAINTIFFS DECLINE TO DEFEND THE LOWER COURT'S HOLDING .......................... 2

II.  THE COURT SHOULD NOT DISTURB THE LOWER COURT'S REJECTION OF
     PLAINTIFFS' DISTINCT § 604(b) THEORY ...................................................... 9

    A.    The Court Need Not Reach Beyond the Certified Question ................. 10

    B.    Regardless, § 604(b) Does Not Apply Because Plaintiffs Earned a
            Weekly Salary ............................................................................. 11

CONCLUSION ..................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Anani v. CVS RX Services, Inc.,*
    788 F. Supp. 2d 55 (E.D.N.Y. 2011) ........................................................................ 16

*Anani v. CVS RX Servs., Inc.,*
    730 F.3d 146 (2d Cir. 2013) .................................................................................. 7, 16

*Anunobi v. Eckerd Corp.,*
    No. 02-cv-820, 2003 WL 22368153 (W.D. Tex. Oct. 17, 2003) ............................. 14

*Bell v. Callaway Partners, LLC,*
    394 F. App'x 632 (11th Cir. 2010) (per curiam) ................................................ 7, 14

*Boykin v. Boeing Co.,*
    128 F.3d 1279 (9th Cir. 1997) ............................................................................ 14, 18

*Caperci v. Rite Aid Corp.,*
    43 F. Supp. 2d 83 (D. Mass. 1999) .......................................................................... 14

*Castellanos-Contreras v. Decatur Hotels, LLC,*
    622 F.3d 393 (5th Cir. 2010) (en banc) .................................................................. 10

*Coates v. Dassault Falcon Jet Corp.,*
    961 F.3d 1039 (8th Cir. 2020) .................................................................................... 7

*Couch v. Telescope Inc.,*
    611 F.3d 629 (9th Cir. 2010) .................................................................................... 11

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
    No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023) (per curiam) ............... 17

*Gentry v. Hamilton-Ryker IT Sols., LLC,*
    No. 19-cv-320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) ................................... 17

*Gonzalez v. CoreCivic, Inc.*,
  986 F.3d 536 (5th Cir. 2021) ........................................ 10

*Hagadorn v. M.F. Smith & Assocs., Inc.*,
  172 F.3d 878, 1999 WL 68403 (10th Cir. 1999) ........................ 7

*Hebert v. FMC Techs., Inc.*,
  No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) ............ 13, 14

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
  598 U.S. 39 (2023) ................................................ 4, 8, 12, 16

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
  15 F.4th 289 (5th Cir. 2021) ....................................... 8

*Home Depot U.S.A., Inc. v. Jackson*,
  139 S. Ct. 1743 (2019) ............................................. 4

*Hughes v. Gulf Interstate Field Servs., Inc.*,
  878 F.3d 183 (6th Cir. 2017) ....................................... 6

*Phillips v. Scientific-Atlanta, Inc.*,
  374 F.3d 1015 (11th Cir. 2004) .................................... 10

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ...................................... 10

*Trottier v. FieldCore Servs. Sols., LLC*,
  No. 20-cv-186, 2022 WL 658765 (N.D. Tex. Mar. 4, 2022) ............ 16

*United States v. Caremark, Inc.*,
  634 F.3d 808 (5th Cir. 2011) ...................................... 10

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
  843 F.3d 1033 (5th Cir. 2016) ..................................... 10

*Venable v. Schlumberger Ltd.*,
  No. 16-cv-241, 2022 WL 895447 (W.D. La. Mar. 25, 2022) ............ 14

*Wilson v. Schlumberger Tech. Corp.*,
   80 F.4th 1170 (10th Cir. 2023) .........................................................................14, 15, 17

*York v. City of Wichita Falls*,
   944 F.2d 236 (5th Cir. 1991) ................................................................................... 14

**STATUTES**

28 U.S.C. § 1292 ........................................................................................................ 11

**OTHER AUTHORITIES**

29 C.F.R. § 541.602 ...........................................................................................*passim*

29 C.F.R. § 541.604 ...........................................................................................*passim*

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H.
   COOPER, FEDERAL PRACTICE AND PROCEDURE (3d ed. 2023) .............................. 10

DOL, Wage & Hour Div., Op. Letter No. 2018-25, 2018 WL 5921453
   (Nov. 8, 2018) ........................................................................................................ 17

DOL, Wage & Hour Div., Op. Letter No. 2020-2, 2020 WL 122924
   (Jan. 7. 2020).......................................................................................................... 18

DOL, Wage & Hour Div., Op. Letter No. 2020-13, 2020 WL 5367070
   (Aug. 31, 2020) ...................................................................................................... 18

## **INTRODUCTION**

FieldCore paid Plaintiffs a weekly salary, well above the minimum threshold for exempt classification, for any week in which they performed any work—consistent with § 602(a)'s definition of the "salary basis" requirement.  FieldCore also paid *extra* for any work in excess of a 40-hour workweek—consistent with § 604(a)'s express allowance for paying "additional compensation" to exempt employees.  But the lower court held that FieldCore violated the salary-basis requirement and so could not invoke any FLSA exemptions.  It reasoned that an employer that pays a salary plus "extras" must, contrary to § 602(a), pay its employees their weekly salary even for weeks they do not work.

As FieldCore explained in its opening brief, that novel interpretation of the FLSA regulations is plainly wrong as a matter of text, history, DOL guidance, and judicial precedent.  The no-work/no-pay principle is part and parcel of § 602(a)'s definition of "salary basis," and nothing in § 604(a) overrides it when an employer chooses to be *more generous* by offering compensation beyond a weekly salary.  Indeed, until the decision below, no court had ever suggested otherwise.  Properly construed in context, § 604(a) simply confirms that an employer does not lose its FLSA exemptions by offering extras to its salaried employees, so long as the guaranteed weekly payment otherwise suffices to satisfy DOL's salary-basis (and salary-level) requirements.

Tellingly, Plaintiffs decline to defend the lower court's rationale.  They confess to "disagreement" with its *sua sponte* construction; the most they can muster is that the decision is not "indefensible."  Resp. Br. iii, 18.  While Plaintiffs ask this Court to affirm

"*if* the Court agrees with the lower court's analysis," their experienced FLSA counsel appreciate why that analysis is fundamentally untenable.  Resp. Br. 4 (emphasis added). That is why they virtually ignore FieldCore's meticulous showing that the lower court erred in reading the regulatory text and history, departed from administrative guidance and applicable precedent, and invited bizarre and counterintuitive results.  There should be no remaining doubt that this Court must reverse and remand.

Although Plaintiffs (correctly) characterize this appeal as "narrow" (Resp. Br. 6) and (incorrectly) criticize FieldCore for trying to exceed its "proper bounds" (Resp. Br. iii), they ultimately devote most of their brief to arguing that FieldCore's exemption defense fails on a distinct ground that the lower court expressly rejected.  Plaintiffs claim they are really "hourly" employees despite their weekly salaries, and that FieldCore must therefore satisfy § 604(b)'s "reasonable relationship" test.  That issue, beyond the scope of the certified question, does not merit interlocutory review.  Regardless, Plaintiffs are wrong.  They earn a weekly salary, not an hourly wage, so § 604(b) is inapplicable by its plain terms, as courts—including this Court—have consistently held.

## ARGUMENT

## I.    PLAINTIFFS DECLINE TO DEFEND THE LOWER COURT'S HOLDING.

As Plaintiffs admit, the question presented by this appeal is a "decidedly narrow" one: whether, to satisfy the salary-basis requirement, a compensation scheme consisting of "a weekly minimum paid on a salary basis plus extras" must guarantee the weekly salary "even in weeks where no work is performed."  Resp. Br. 6.

The lower court thought so, even though § 602(a)—the "[g]eneral rule" defining the "salary basis" concept—expressly provides that "[e]xempt employees need not be paid for any workweek in which they perform no work." 29 C.F.R. § 541.602(a)(1). The lower court believed that no-work/no-pay principle was superseded by § 604(a)'s statement that an employer may pay "extras" only if it provides "a guarantee of at least the minimum weekly-required amount paid on a salary basis." *Id.* § 541.604(a). The court thus rejected FieldCore's exemption defense on the sole basis that FieldCore did not pay Plaintiffs for weeks in which they performed no work. ROA.5781.

The lower court got this wrong. And Plaintiffs know it. Despite prevailing on FieldCore's central defense to FLSA liability, they decline to endorse the lower court's analysis, which the court developed *sua sponte*. Plaintiffs faithfully *describe* the court's reasoning, but refuse to *defend* it. They carefully (but tautologically) advise this Court to affirm only *if* the Court "agrees with the lower's court's analysis." Resp. Br. 4.[1] The furthest Plaintiffs themselves are willing to go is to say that the lower court's decision is not "indefensible." Resp. Br. 18. Of course, the question on appeal is not whether the lower court's interpretation is *defensible*; the question is whether it is *correct*. As all parties now agree, it is not.

---

[1] Repetition confirms that this conditional phrasing was intentional. *See, e.g.*, Resp. Br. 15 ("If the lower court applied *Helix I*'s interpretation of the 'guarantee' … correctly, the Court should affirm the district court's order."); Resp. Br. 18 ("If the district court's interpretation of 'guarantee' is correct, this Court must affirm."); Resp. Br. 22 ("If the district court correctly interpreted the 'guarantee' required by § 604(a), this Court should affirm.").

**Text.** The regulatory text, read in context as it must be, exposes the error. *See* FieldCore Br. 20-26. The lower court reasoned that "'guarantee' … means 'guarantee.'" ROA.5781. That is true as far as it goes, but the next question is: "guarantee" *of what*? The court overlooked that § 604(a) requires a "guarantee of at least the minimum weekly-required amount *paid on a salary basis*," 29 C.F.R. § 541.604(a) (emphasis added), with that italicized phrase already carefully delimited by an earlier provision explaining when an employee "will be considered to be paid on a 'salary basis' within the meaning of this part," *id.* § 541.602(a). By referring to guaranteed payment "on a salary basis," § 604(a) incorporates the latter rule. And, under that rule, "salary basis" does not require paying employees for a week in which they "perform no work." *Id.* § 541.602(a)(1). It follows that a "guarantee" of salary-basis payment does not require such payment either.

That alone compels reversal. As Plaintiffs admit, §§ 602 and 604 "must be read to complement each other." Resp. Br. 13, 16 (quoting *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 56 (2023) (*Helix II*)); *see also Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1747-48 (2019) (emphasizing that provisions must be read in "context" and in light of "their place in the overall … scheme"). So while § 604 may "tak[e] over where § 602(a) leaves off," *Helix II*, 598 U.S. at 56, that does not mean § 604 starts fresh on a blank slate. Yet the lower court tried to read § 604(a) while ignoring § 602's regulatory definition of what it means to be "paid on a salary basis." Rather than read these two provisions "to complement each other," the court by its own admission rendered them "fundamentally at odds" with each other. ROA.5567. That was error.

Plaintiffs do not seriously grapple with this simple point, or with the other textual evidence that the lower court went awry. *See* FieldCore Br. 22-23. Instead, they argue that it is "possible" to read § 604(a) as imposing an additional hurdle, because there are "at least some textual indications" to that effect. Resp. Br. 18, 21. Even that weak and qualified claim is overstated. The two "indications" that Plaintiffs identify do not even arguably support the lower court's interpretation—and certainly do not make it the best interpretation, as even Plaintiffs implicitly admit.

*First*, Plaintiffs argue that FieldCore ignores the word "guarantee," which appears in § 604(a) but not in § 602(a). *See* Resp. Br. 19-20. Not so. FieldCore fully agrees that § 604(a) requires a "guarantee." The question is *what* must be guaranteed. The answer, in plain text: "the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Inserting § 602(a)'s definition of "paid on a 'salary basis'" produces the following rule: Paying extras comports with the salary-basis requirement so long as the employment arrangement "also includes a guarantee of at least the minimum weekly-required amount" that (now looking to § 602(a)): is "regularly" paid "each pay period on a weekly, or less frequent basis"; is "predetermined" and "not subject to reduction because of variations in the quality or quantity of the work performed"; but "need not be paid for any workweek in which [the employee] perform[s] no work." Simply put, it is not FieldCore that is ignoring the word "guarantee." It is the lower court that ignored the critical cross-reference defining the *substance* of that guarantee.

Contrary to Plaintiffs' claim, this does not leave the word "guarantee" in § 604(a) superfluous. That word serves to distinguish the minimum weekly amount from the "extras." The "extras" may be conditional or even discretionary; the minimum weekly salary must be guaranteed. The "extras," moreover, do not count toward the minimum weekly-required amount; the latter salary must be guaranteed without regard to whether the employee earns a bonus or commission or overtime premium. Unlike § 604(a), § 602(a) does not discuss these "extras" and therefore does not need to distinguish them from the "guaranteed" salary. None of that remotely means that § 604(a) overrides the definition of "salary basis" and its no-work/no-pay proviso.

*Second*, Plaintiffs highlight that § 604(a) refers to an "employment arrangement" whereas § 602(a) speaks more simply of the sum an employee "regularly receives." Resp. Br. 20-21. That is a red herring. Perhaps that textual distinction means that an employer paying "extras" must memorialize its compliance with the salary-basis requirement in a written "employment arrangement," as opposed to merely as a matter of practice. *Cf. Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017) (recounting argument that under § 604's "employment arrangement" language, a court must "look beyond payment received to the formal terms of the employment arrangement"). But even if so, FieldCore did that. Plaintiffs' guaranteed weekly salaries were embedded in their offer letters and therefore were built into their "employment arrangement." *See* FieldCore Br. 10-11. In any event, this textual distinction does nothing to advance the lower court's theory that § 604(a) requires payment even for non-working weeks.

**Regulatory History.**  FieldCore's account of the interplay between § 602(a) and § 604(a) accords with the history of these provisions, which started out as parts of a single regulation linked by an "In other words" clause.  Indeed, since the dawn of the FLSA regulations, the no-work/no-pay principle and the allowance for "extras" beyond a weekly salary were viewed as mutually compatible, and DOL has for decades opined accordingly both expressly and implicitly.  *See* FieldCore Br. 26-32.

Plaintiffs ignore all this.  Rather than grapple with the regulatory history, they insist that it would be "reasonabl[e]" for DOL to "add conditions" to protect exempt employees when employers offer them "extras."  Resp. Br. 20.  Even on its own terms, that is hard to understand: Why would employees need protection from being paid *extra*?  More fundamentally, the question is not whether it would be "reasonable" for DOL to promulgate a regulation imposing additional restrictions on employers who pay extras.  The question is whether DOL actually did impose such restrictions, and in particular whether DOL required such employers to pay salaries even for weeks when employees do not perform any work.  Decades of regulatory history and guidance confirm that the agency did nothing of the sort, and Plaintiffs offer no basis to conclude otherwise.

**Precedent.**  FieldCore cited a host of cases that applied the regulations contrary to the lower court's unique interpretation.  *See Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039 (8th Cir. 2020); *Bell v. Callaway Partners, LLC*, 394 F. App'x 632 (11th Cir. 2010) (per curiam); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013); *Hagadorn v. M.F. Smith & Assocs., Inc.*, 172 F.3d 878, 1999 WL 68403 (10th Cir. 1999) (tbl.).

Plaintiffs ignore these authorities too.  They also fail to cite any cases the other way.  They exclusively cite this Court's consideration of § 604(b) in *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 291 (5th Cir. 2021) (*Helix I*).  *See* Resp. Br. 22.  But *Helix I* simply held that, under § 604, a minimum weekly guarantee of payment on a salary basis is a "condition" of qualifying for a FLSA exemption.  *See* 15 F.4th at 291.  That is undisputed.  *Helix* did not confront the distinct question presented in this case, which is whether the § 604 "guarantee" of payment on a "salary basis" incorporates, or instead somehow overrides, the salary-basis requirements spelled out in § 602(a).

**Bizarre Consequences.**  The long-accepted interpretation of § 604 also avoids the very strange consequences of the lower court's holding, under which the difference between an exempt and a non-exempt employee can reduce to whether he happened to earn a year-end bonus—with the higher-paid employee counterintuitively *losing* the exemption and qualifying for time-and-a-half overtime.  *See* FieldCore Br. 38-40.

Perhaps recognizing that does not make sense, Plaintiffs offer a conclusory one-sentence footnote suggesting that § 604(a)'s guarantee can have "exceptions" to avoid those problems.  Resp. Br. 20 n.6.  Tellingly, however, they never explain what those exceptions are, where they come from, or why they would not apply here.  There is no reason to read § 604(a) to impose a restrictive straight-jacket and then cut whole cloth "exception[s]" to relieve the tension.  By simply interpreting § 604(a)'s "guarantee" of payment "on a salary basis" to incorporate § 602's explication of that phrase, one avoids upending the entire FLSA exemption scheme in the first place.

8

## II.  THE COURT SHOULD NOT DISTURB THE LOWER COURT'S REJECTION OF PLAINTIFFS' DISTINCT § 604(b) THEORY.

Plaintiffs repeatedly concede that the only "narrow" issue before the Court is the meaning of § 604(a)'s "guarantee" language.  *See* Resp. Br. 1, 6, 7.  Plaintiffs even critique FieldCore for supposedly straying beyond the "bounds of this appeal" (which FieldCore did not).  Resp. Br. iii.  Ironically, however, Plaintiffs then devote most of their brief to a totally distinct issue.  Specifically, they argue that they are "hourly" wage-earners, and therefore that § 604(b) governs this case and triggers a "reasonable relationship" test.  *See* Resp. Br. 1-3, 5-6, 17 n.5, 22-25.  To be clear, Plaintiffs do not ask the Court to *affirm* on this alternative ground, because their theory would still require the lower court to apply the "reasonable relationship" test in the first instance.  But they submit that, if the Court rejects the lower court's interpretation of "guarantee," it should also reverse the court's rejection of their unrelated argument about § 604(b).  *See* Resp. Br. 6.

The Court should decline that invitation.  At the threshold, there is no need at this juncture to address the § 604(b) issue, which is well beyond the certified question and would not itself satisfy the requisites for interlocutory appeal.  Plaintiffs will have an opportunity after final judgment to raise this and any other objections to the court's application on remand of the FLSA regulations.  But if the Court chooses to advance to that second question, it should hold that the lower court correctly rejected Plaintiffs' § 604(b) theory.  The regulatory text and overwhelming precedent foreclose Plaintiffs' flawed interpretation, which ultimately conflates § 604(a) with § 604(b).

**A.  The Court Need Not Reach Beyond the Certified Question.**

As Plaintiffs recognize, "[t]his interlocutory appeal involves a decidedly narrow question…. '[D]oes 29 C.F.R. § 604(a) require a weekly guarantee even in weeks where no work is performed….'" Resp. Br. 6.  That is the question on which FieldCore sought, and this Court granted, interlocutory review.  Pet., No. 23-90020, Dkt. 2-2, at 4 (5th Cir. July 12, 2023).  Meanwhile, Plaintiffs' argument about the applicability of § 604(b)— which turns on whether Plaintiffs are properly characterized as "hourly" workers—is factually and doctrinally distinct.  There is no need for the Court to reach that distinct question in the posture of this "narrow" interlocutory appeal.

To be sure, the Court has *jurisdiction* to reach any issue fairly included in the underlying order.  *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc).  But this Court routinely declines to exercise its power to address issues beyond the scope of the certified question.  *See, e,g.*, *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1041 & n.27 (5th Cir. 2016); *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 540 (5th Cir. 2021) (Ho, J., concurring); *United States v. Caremark, Inc.*, 634 F.3d 808, 811 n.1 (5th Cir. 2011).  Other Circuits likewise "decline to permit" parties "to parlay a discrete certified question … into a wide-ranging relitigation on appeal of the district court litigation." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 n.3 (11th Cir. 2004); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 689-90 (9th Cir. 2011); 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3929 & n.72 (3d ed. 2023).

There is no reason Plaintiffs should be entitled to interlocutory review on their § 604(b) theory just because the district court erred on a distinct issue. After all, the § 604(b) question would not support interlocutory appeal on its own. Among other things, the lower court's recognition that § 604(b) does not apply because Plaintiffs were paid a salary "on a weekly basis" (ROA.5565, ROA.5782-83) is in accord with existing precedent. Plaintiffs cite no authority to support their disagreement with the district court on this front. *See infra*, Part II.B.2. That means there is no "substantial ground for difference of opinion." 28 U.S.C. § 1292(b); *see also, e.g., Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (rejecting interlocutory appeal where there was no disagreement among courts on the legal question presented).

The Court should thus reverse the erroneous order below and remand for proper application of the FLSA regulations. Any further objections by either side to the court's decision on remand can then be addressed after final judgment, if necessary.

## B.    Regardless, § 604(b) Does Not Apply Because Plaintiffs Earned a Weekly Salary.

If the Court chooses to advance beyond the certified question, it should reject Plaintiffs' argument. The lower court correctly held that § 604(a) applies, not § 604(b), because Plaintiffs are "paid on a weekly basis," not on "an hourly … basis." ROA.5565; *see also* ROA.5782-83. That result is compelled by the regulations' plain text, and aligns with precedent from this Court and beyond. Like their brief generally, Plaintiffs' counterarguments collapse the distinction between § 604(a) and § 604(b).

**1.**    Section 602(a) provides that an employee is paid on a "salary basis" if "all or part" of the employee's compensation is a pre-determined, non-variable sum, paid "on a weekly, or less frequent basis" for weeks the employee performs any work.  29 C.F.R. § 541.602(a).  Section 604(a) confirms that such a salaried employee may earn extra pay, including "based on hours worked for work beyond the normal workweek." *Id.* § 541.604(a).  Meanwhile, § 604(b) sets forth a "second path," *Helix II*, 598 U.S. at 55, for employees whose earnings are computed "on an hourly, a daily or a shift basis." 29 C.F.R. § 541.604(b).  That path requires providing a weekly minimum guarantee that also bears a "reasonable relationship" to the employee's actual weekly earnings.  But the regulation is very clear that the "reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily, or shift basis."  *Id.*

The regulations thus create a dichotomy: Employees paid a salary on a "weekly" or less frequent basis are governed by §§ 602(a) and 604(a), and may be paid extra for overtime hours without violating the salary-basis test.  Employees paid on an "hourly" (or daily or shift) basis are governed by § 604(b), and must also satisfy the "reasonable relationship" test.  There is thus no mystery about the rhetorical question that Plaintiffs pose: "when would the second step of § 604(b) [*i.e.*, the reasonable relationship test] ever apply?"  Resp. Br. 5.  It applies in cases like *Helix*, where the employee is paid a day rate (or an hourly rate, or a shift rate), rather than a weekly salary.  *Helix II*, 598 U.S. at 50 (explaining that § 602(a) applies when employees are "paid by the week" whereas § 604(b) applies if they are paid "by the day").

Applying that dichotomy to this case is simple. Plaintiffs received a weekly base salary for any week in which they performed any work. *See* ROA.3338-43; ROA.3346; ROA.3351-54; ROA.3358-59; ROA.3362-64; ROA.3631; ROA.4095; ROA.4418. They were guaranteed their weekly salaries whether they worked 1 hour or 40 that week. *E.g.*, ROA.5401-02. That is not payment on an "hourly, daily, or shift basis" under § 604(b); it is payment on a "salary basis" under § 604(a). True, FieldCore also paid Plaintiffs *extras*, calculated on an hourly basis, if they exceeded 40 hours in a week. But § 604(a) blesses exactly that by authorizing extras on "any … basis" including "straight-time hourly" pay for "work beyond the normal workweek." To treat that as transforming Plaintiffs into "hourly" workers under § 604(b) would thus collapse the two subsections.

This Court just last year recognized that § 604(b) does not apply to an employee who earns a weekly salary plus hourly or daily premiums. *See Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023). The employee there earned a bi-weekly salary, plus a daily premium for days spent in the field. *Id.* at *2. This Court explained that "[an employee] does not lose his status as [one] paid on a salary basis just because he is also paid a bonus on top of the salary that … was guaranteed to him." *Id.* Section 604(a) applied, even though the "bonus" at issue was computed on a daily basis, because the employee's base pay was calculated on a weekly or less frequent basis. *See id.* & n.4 (quoting 29 C.F.R. § 541.604(a)). Section 604(b) was inapplicable, and the "reasonable relationship requirement" was thus irrelevant, "because the record show[ed] Hebert was paid a guaranteed bi-weekly salary." *Id.* & n.5.

13

*Hebert* was unpublished, but it applied settled law.  This Court appreciated three decades ago that "[p]aying an hourly rate for each hour worked beyond the regular schedule does not defeat the [FLSA] exemption." *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991).  More recently, the Tenth Circuit agreed that § 604(a) "applies to employees who receive additional compensation above a base salary," while § 604(b) "applies when an employee is … typically paid on an hourly, daily, or shift basis." *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1176-77 (10th Cir. 2023) (Tymkovich, J.).  As in *Hebert*, the employee in *Wilson* earned a bi-weekly salary plus an hourly bonus for time in the field; the court held he remained a "salaried" exempt employee under § 604(a), not an "hourly" one under § 604(b).  *See id.* at 1177-79 (citing *Hebert* and noting that § 604(a) "expressly allows for additional compensation to be paid on any basis").

Abundant other precedent agrees that payment of extras under § 604(a) does not convert a salaried employee into an hourly one governed by § 604(b).  *See, e.g.*, *Boykin v. Boeing Co.*, 128 F.3d 1279, 1281-82 (9th Cir. 1997) ("overtime compensation," including on hourly basis, "does not spoil exempt status"); *Bell*, 394 F. App'x at 634 (employees paid a salary based on a 40-hour workweek and hourly rate for hours beyond 40 satisfied salary-basis test).[2]  Notably, Plaintiffs fail to cite *any authority* the other way.

---

[2] *See also Anunobi v. Eckerd Corp.*, No. 02-cv-820, 2003 WL 22368153, at *5 (W.D. Tex. Oct. 17, 2003) ("fact [that] Plaintiff received an additional $5 per hour for hours worked beyond 42 or 40 … does not negate his salary status"); *Venable v. Schlumberger Ltd.*, No. 16-cv-241, 2022 WL 895447, at *3-5 (W.D. La. Mar. 25, 2022) (§ 604(b) does not apply to employees paid a weekly salary and additional compensation for days spent on oil rig); *Caperci v. Rite Aid Corp.*, 43 F. Supp. 2d 83, 95-96 (D. Mass. 1999) (similar).

**2.**    Plaintiffs' counterarguments do not persuade.   *First*, Plaintiffs contend that their earnings were "computed on an hourly … basis" under § 604(b), because they received an hourly premium when they worked more than 40 hours in a week and so their pay "varied directly with the number of hours worked" beyond 40.  *See* Resp. Br. 23-24.  But that reasoning is untenable, as it would collapse all "salary plus premium" pay models into § 604(b) cases.  That would render superfluous § 604(a)'s permission to pay extras to salaried employees "on any basis" including "straight-time hourly."  As Judge Tymkovich thus explained in *Wilson*, § 604(a) properly applies when an employee receives a "base salary" consistent with § 602(a), whereas § 604(b) kicks in only when the base pay itself fluctuates on a daily or hourly basis.  80 F.4th at 1176-77.  Plaintiffs here fall into the former category, not the latter.

*Second*, Plaintiffs emphasize that their guaranteed salaries amounted to 40 times the hourly rate they received for work in excess of 40 hours per week.  *See* Resp. Br. 24.  That is true but irrelevant.  Plaintiffs were entitled to their full weekly salaries for any week in which they worked—even if for only an hour.  ROA.5401-02.  Indeed, multiple Plaintiffs admitted in their depositions that they benefited from that arrangement by receiving their full salaries for weeks in which they worked less than 40 hours.  *See, e.g.*, ROA.5540 (Oberndorfer), ROA.5544 (Speer), ROA.5562-63 (Starr), ROA.5599 (Collazo).  Those undisputed facts mean that Plaintiffs enjoyed a weekly salary under § 602(a) and § 604(a), and were not paid on an hourly basis under § 604(b).  *See Wilson*, 80 F.4th at 1177.

In such circumstances, the manner in which the employer determined the weekly salary amount garners no weight in the analysis.  In *Anani*, for example, the plaintiff made the same argument: that he was an hourly employee because his "base salary was based on a forty-four hour work week," 730 F.3d at 147, calculated by multiplying an hourly amount by 44 hours, *Anani v. CVS RX Services, Inc.*, 788 F. Supp. 2d 55, 62 (E.D.N.Y. 2011), *aff'd*, 730 F.3d 146.  The court held that was perfectly compatible with § 604(a), which allows "straight-time hourly" extras.  788 F. Supp. 2d at 65, 67-68.

*Third*, Plaintiffs claim that Judge Kacsmaryk in another case treated the *frequency* of payment as controlling whether the employees were salaried, but the Supreme Court later clarified that the salary-basis test does not turn on "when or how often [an] employer actually doles out the money."  *Helix II*, 598 U.S. at 53.  *See* Resp. Br. 22-23 (citing *Trottier v. FieldCore Servs. Sols., LLC*, No. 20-cv-186, 2022 WL 658765 (N.D. Tex. Mar. 4, 2022)).  Plaintiffs caricature the *Trottier* ruling.  They quote a single sentence, but ignore that it followed a lengthy discussion of the salary-basis test that properly looked to the legally relevant factors under § 602(a).  *See Trottier*, 2022 WL 658765, at *7. Regardless, even Plaintiffs do not contend that Judge Kacsmaryk considered payment frequency here—he instead held that the offer letters, which guaranteed weekly *amounts* regardless of work quantity or quality, meant Plaintiffs were paid on a salary basis.  *See* ROA.5782-83 ("Greinstein and the other Plaintiffs' offer letters promise 'a weekly salary' at a set rate 'regardless of the number of hours worked in the week.'  So far so good under 602(a).").  That was correct.  *Trottier* is thus an irrelevant *non sequitur*.

*Finally*, Plaintiffs seek refuge in a DOL amicus brief filed in a different case, and a DOL opinion letter. Neither helps them. The amicus brief concerned a case where an employer offered a "[w]eekly [s]alary equal to 8 hours of pay" plus an hourly rate for work beyond that. *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 19-cv-320, 2022 WL 658768, at *2 (S.D. Tex. Mar. 4, 2022). The district court found that § 604(b) applied because the 8-hour guarantee was not a salary for a "normal workweek," as § 604(a) contemplates. *Id.* at *6. DOL agreed in its amicus brief on appeal. Here, by contrast, FieldCore guaranteed Plaintiffs a weekly salary equivalent to a 40-hour workweek—and, notably, "[t]he FLSA establishes a 40-hour workweek" as the default. *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, No. 22-40219, 2023 WL 4704115, at *1 (5th Cir. July 24, 2023) (per curiam), *opinion withdrawn on pet'n for rehearing*, Doc. 106 (5th Cir. Jan. 26, 2024). So, unlike in *Gentry*, FieldCore's additional hourly pay complied with § 604(a).

The DOL opinion letter is similarly unhelpful. There, DOL was asked whether a payment arrangement (one that presumed a 30-hour workweek, not a standard 40-hour workweek) satisfied § 604(b)'s reasonable-relationship test. DOL, Wage & Hour Div., Op. Letter No. 2018-25, 2018 WL 5921453 (Nov. 8, 2018). In other words, DOL was asked to assume that § 604(b) and its "reasonable relationship" requirement applied to a specific payment arrangement. *See id.* So the opinion letter does not provide any clarification on when § 604(b) applies in the first instance, let alone whether it applies here. *Accord Wilson*, 80 F.4th at 1179 n.4 (distinguishing this opinion letter).

17

Elsewhere, however, "DOL has unequivocally and consistently declared that additional compensation in the form of hourly overtime payment does not defeat exempt status under the salary-basis test." *Boykin*, 128 F.3d at 1281. Indeed, other DOL opinion letters affirmatively recognize that plans like FieldCore's fulfill the salary-basis test without any need to satisfy the reasonable-relationship test. If an employee is otherwise exempt and receives a guaranteed weekly salary for those weeks when work is performed, then paying additional compensation on any basis—including an hourly premium—does not vitiate the exemption. *See, e.g.*, DOL, Wage & Hour Div., Op. Letter No. 2020-13, 2020 WL 5367070, at *4 (Aug. 31, 2020) ("If the employees [are] otherwise exempt …, the development work payments would not affect that status…. includ[ing] a per-hour payment."); DOL, Wage & Hour Div., Op. Letter No. 2020-2, 2020 WL 122924, at *3 (Jan. 7. 2020) (acknowledging that "additional compensation … can be paid on any basis" and when "underlying compensation is not computed on an hourly, daily, or shift basis, the reasonable relationship requirement does not apply").

In short, Plaintiffs' § 604(b) arguments are meritless. Plaintiffs enjoyed a weekly salary for any week in which they performed work, without any reduction if they spent less than 40 hours on the job. That is all that is required to qualify as payment on a "salary basis." To the extent the Court chooses to address the "reasonable relationship" question in an interlocutory posture, it should therefore adopt the district court's determination that § 604(a) rather than § 604(b) governs here.

# CONCLUSION

For the foregoing reasons, this Court should reverse the district court's certified order and remand for proper application of the FLSA exemption regulations.

Date: January 31, 2024

s/ *Jacob Moshe Roth*
Jacob (Yaakov) M. Roth
yroth@jonesday.com
Joshua T. Hoyt
jhoyt@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

Respectfully submitted,

Brett C. Bartlett
bbartlett@seyfarth.com
Kevin M. Young
kyoung@seyfarth.com
Zheyao Li
zyli@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree St., N.E., Ste. 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500

*Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2024, the foregoing brief was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I further certify that all parties required to be served have been served.

Dated: January 31, 2024                    Respectfully submitted,


                                           <u>s/ *Jacob Moshe Roth*    </u>
                                           *Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.     This document complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 5, this brief contains 5102 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Garamond font.

_s/ Jacob Moshe Roth_
_Counsel for Appellants_
